UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J.A.L.,<br><br>             Plaintiff,<br><br>   v.<br><br>MIKE SANTOS, et al.,<br><br>             Defendants. | Case No. 15-CV-00355-LHK<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 29 |

Plaintiff J.A.L. ("Plaintiff"), a minor, brings this action against Defendants Sergeant Michael Santos ("Sgt. Santos") and Officer Frits Van der Hoek ("Officer Van der Hoek") (collectively, "Defendants"). Before the Court is Defendants' motion for summary judgment. ECF No. 29. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS Defendants' motion for summary judgment.[1]

---

[1] In addition, Defendants have filed a request for judicial notice of San Jose State University's student population at the time of the incident, the fact that the incident took place during the Spring 2014 semester, and the location of various buildings relative to the location of the incident, as depicted by Google Maps. ECF No. 30. Plaintiff opposes Defendants' request for judicial notice on the grounds that the information for which judicial notice is sought is irrelevant to the motion for summary judgment. ECF No. 41. In the instant Order, the Court does not rely upon any of the information for which judicial notice is sought. Accordingly, the Court DENIES Defendants' request for judicial notice as moot.

1
Case No. 15-CV-00355-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. BACKGROUND

### A. Factual Background

This case arises from the fatal shooting of Plaintiff J.A.L.'s father, Antonio Lopez ("Mr. Lopez") by Sgt. Santos on February 21, 2014.

At 10:55 a.m. on February 21, 2014, a student at San Jose State University made a report to the San Jose State University Police Department ("SJSUPD") that there was a man outside the Print Shop on campus wielding a 10-12 inch blade and making stabbing motions in the air with the blade. Decl. of Aimee Hamoy-Perera ("Hamoy-Perera Decl."), ECF No. 29-1, Exh. A at 41:8-14, 42:6-17, 130:9-15; *id.* Exh. B at 157:8-17. Sgt. Santos responded to the alert sent out by the SJSUPD. *Id.* Exh. A at 41:8-21. According to Sgt. Santos, the alert indicated that there was an individual with a weapon who posed a potential threat, and the alert included a physical description of the individual with the weapon. *Id.* at 41:12-14, 43:20-24.

Sgt. Santos encountered Mr. Lopez near 8th Street and San Salvador Street in San Jose. *Id.* at 43:7-44:12. Mr. Lopez matched the description of the individual described in the SJSUPD alert. *Id.* 43:18-24. Sgt. Santos held his firearm at the low-ready position when Sgt. Santos exited his vehicle near Mr. Lopez. *Id.* at 45:11-15. Sgt. Santos did not activate his body camera prior to approaching Mr. Lopez. Decl. of Jaime A. Leaños ("Leaños Decl."), ECF No. 40-1, Exh. B at 27:18-28:1.

According to Sgt. Santos, when Sgt. Santos first approached Mr. Lopez, Mr. Lopez was walking or standing on the sidewalk. *Id.* at 44:8-12, 45:5-6. Sgt. Santos ordered Mr. Lopez to get on the ground and show his hands. *Id.* at 48:10-15. At some point, Mr. Lopez knelt on the sidewalk, but Mr. Lopez did not otherwise comply with Sgt. Santos's commands. *Id.* at 50:2-3, 52:15-19, 53:5-6.

Officer Van der Hoek arrived at the scene shortly thereafter, while Mr. Lopez was still kneeling on the ground. *Id.* Exh. N (video recording from Officer Van der Hoek's body camera). Officer Van der Hoek had his body camera turned on before arriving at the scene, and Officer Van der Hoek's camera captured visually the entire incident beginning at the time of Officer Van der

2

Hoek's arrival. *Id.* The video from Officer Van der Hoek also includes audio beginning shortly after Officer Van der Hoek exited his vehicle. *Id.*

The video shows that after Officer Van der Hoek arrived, Mr. Lopez stood up, reached his hands into the pocket of his sweatshirt, and pulled out a blade that was over 12 inches long. *Id.*; *see also* Hamoy-Perera Decl., Exh. E (photograph of blade showing that it measured 13.5 inches in length). Mr. Lopez held the blade, which had no handle, in his bare right hand with the blade pointed forward. *Id.* Exh. A at 129:22-130:8. Sgt. Santos instructed Mr. Lopez to drop the blade, but Mr. Lopez ignored Sgt. Santos. *Id.* at 69:4-8, 69:20-70:15. Mr. Lopez then began to walk on the sidewalk away from Sgt. Santos and closer to where Officer Van der Hoek stood. Leaños Decl. Exh. N.

Officer Van der Hoek yelled "Taser! Taser! Taser!" then deployed his Taser at Mr. Lopez. *Id.* The Taser coil rebounded off of Mr. Lopez's sweatshirt with no apparent effect on Mr. Lopez. *Id.* Mr. Lopez then turned toward Officer Van der Hoek and began to run in the direction of Officer Van der Hoek. *Id.*

Officer Van der Hoek moved backwards into the street while Mr. Lopez ran in Officer Van der Hoek's direction. *Id.* As Mr. Lopez, who still held the blade in his right hand, came closer to Officer Van der Hoek, Officer Van der Hoek shouted "Shoot him! Shoot him!" to Sgt. Santos. *Id.* Sgt. Santos fired his gun twice, striking Mr. Lopez in the back with both shots. *Id.* Mr. Lopez immediately fell forward onto the street. *Id.* Sgt. Santos and Officer Van der Hoek handcuffed Mr. Lopez and rendered emergency medical aid. *Id.* Sgt. Santos radioed for an ambulance, and paramedics arrived within 5 minutes of the shooting. *Id.*

Mr. Lopez subsequently died from the injuries sustained in the shooting. Leaños Decl. Exh. H.

### B. Procedural History

Plaintiff filed the instant lawsuit on January 26, 2015. ECF No. 1. On March 2, 2015, the Court appointed Laurie Valdez to be Plaintiff's Guardian Ad Litem. ECF No. 11.

Defendants filed the instant motion for summary judgment on November 24, 2015. ECF

3

Case No. 15-CV-00355-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

No. 29. Plaintiff filed a resonse on January 8, 2016. ECF No. 40. Defendants filed a reply on January 22, 2016. ECF No. 43.

## II. LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party, *id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party, but on an issue for which the opposing party will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

Additionally, when, as here, there is videotape evidence of the incident in question, the Court at summary judgment must view "the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).

## III. DISCUSSION

Plaintiff brings four causes of action against Defendants: (1) a claim under 42 U.S.C. § 1983 for violation of Mr. Lopez's Fourth Amendment rights; (2) a claim under 42 U.S.C. § 1983 for excessive force and failure to provide medical aid in violation of Mr. Lopez's Fourteenth Amendment rights; (3) a state law claim for wrongful death; and (4) a state law claim for negligence. Defendants move for summary judgment on all four counts. ECF No. 29.

The Court begins by addressing Plaintiff's § 1983 claims and then turns to Plaintiff's state law claims.

### A. Section 1983 Claims for Fourth and Fourteenth Amendment Violations

Plaintiff's § 1983 claim alleges that Defendants violated Mr. Lopez's Fourth and Fourteenth Amendment rights by unlawfully using deadly force against Mr. Lopez. Defendants argue that summary judgment is appropriate on Plaintiff's § 1983 claims because Defendants are entitled to qualified immunity for the use of deadly force against Mr. Lopez.

#### 1. Legal Standard for Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (per curiam). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *City & Cty. of S.F. v. Sheehan*, 135 S.Ct. 1765, 1774 (2015) (internal quotation marks and brackets omitted). The qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mendez v. Cty. of L.A.*, Nos. 13-56686, 13-57072, 2016 WL 805719, at *3, -- F.3d --- (9th Circ. March 2, 2016) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The U.S. Supreme Court has explained that there are two questions a court must resolve to determine whether qualified immunity applies: (1) "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right;" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v.*

5

*Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier*, 533 U.S. at 201). Qualified immunity applies unless the answer to both questions is "yes." *Id.* A court has discretion to decide in which order to address the two qualified immunity inquiries. Thus, if a court concludes that the answer to either question is "no," qualified immunity applies and the court need not address the remaining inquiry. *Id.*

The Court begins by discussing whether Plaintiff has shown facts that establish a violation of a constitutional right. Because the Court concludes that Plaintiff has not, the Court need not address the second question of the qualified immunity analysis.

### 2. Whether Plaintiff Has Shown Defendant's Use of Deadly Force Constitutes a Fourth Amendment Violation

In Plaintiff's first cause of action, Plaintiff alleges that Defendants violated Mr. Lopez's Fourth Amendment rights by using deadly force against Mr. Lopez. The U.S. Supreme Court has held that courts must evaluate allegations that an officer's use of force, including deadly force, violates the Fourth Amendment under a standard of "reasonableness." *Harris*, 550 U.S. at 383. "An officer's use of deadly force is reasonably only if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994) (quoting *Tennessee v. Garner*, 471 U.S. 1, 3 (1985)) (emphasis omitted). "All determinations of unreasonable force 'must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly revolving—about the amount of force that is necessary in a particular situation.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

The Court has reviewed the video of the events of February 21, 2014 numerous times both at full speed and in slow motion. The Court additionally has reviewed the still-frame images from the video submitted by Plaintiff, along with all of the exhibits submitted by both parties in connection with the instant motion. Viewing "the facts in the light depicted by the videotape," *Harris*, 550 U.S. at 381, the Court finds that at the time Officer Van der Hoek shouted for Sgt.

6

Case No. 15-CV-00355-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Santos to shoot Mr. Lopez and at the time Sgt. Santos fired two shots at Mr. Lopez, Mr. Lopez was holding a blade over 12 inches in length in Mr. Lopez's right hand and was running toward Officer Van der Hoek. The Court concludes that in light of the facts that Mr. Lopez had not complied with Sgt. Santos's commands to remain on the ground and show his hands, that Mr. Lopez had instead taken out a blade over 12 inches long from his sweatshirt pocket, that Mr. Lopez had refused to comply with Sgt. Santos's command to drop the blade, that Officer Van der Hoek had deployed his Taser at Mr. Lopez without success, and that Mr. Lopez, with the long blade in hand, was running toward Officer Van der Hoek, Defendants had probable cause to believe that Mr. Lopez posed a significant threat of death or serious physical injury to Officer Van der Hoek. Accordingly, the Court concludes that Defendants' use of deadly force against Mr. Lopez does not constitute a Fourth Amendment violation. *See Henrich*, 39 F.3d at 914 ("An officer's use of deadly force is reasonable only if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" (quoting *Garner*, 471 U.S. at 3) (emphasis omitted)).

The U.S. Supreme Court's holding in *Sheehan* is instructive to the instant case. The plaintiff in *Sheehan* had a mental illness and lived in a group home for individuals with mental illnesses. 135 S. Ct. at 1769. The defendant police officers responded to a call from a social worker for assistance removing the plaintiff from the group home because the social worker believed that the plaintiff was a "threat to others." *Id.* at 1770. When the officers entered the plaintiff's room, the plaintiff "grabbed a kitchen knife with an approximately 5-inch blade and began approaching the officers, yelling something along the lines of 'I am going to kill you. I don't need help. Get out.'" *Id.* The officers retreated from the plaintiff's room, and then decided that they would reenter the room while one officer used pepper spray on the plaintiff. *Id.* at 1770-71. When the officers reentered the room, one officer used pepper spray on the plaintiff as planned. *Id.* at 1771. Despite the use of pepper spray, the plaintiff advanced on the officers with the knife in her hand until the plaintiff was about two feet away from the officers. *Id.* At that point, the officers fired multiple shots at the plaintiff. *Id.*

7
Case No. 15-CV-00355-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The U.S. Supreme Court held that the officers in *Sheehan* were justified in their use of potentially deadly force against the plaintiff when she approached the officers with a blade after the officers attempted to subdue the plaintiff with pepper spray. *Sheehan*, 135 S. Ct. at 1775. Specifically, the U.S. Supreme Court held that "[n]othing in the Fourth Amendment barred [the defendant officers] from protecting themselves, even though it meant firing multiple rounds." *Id.* Moreover, the U.S. Supreme Court held that the officers were justified in firing at the plaintiff in order to protect themselves even though the officers knew that the plaintiff had a mental illness, and even though the officers may not have followed their training in how they chose to enter the plaintiff's room. *Id*. at 1775, 1777-78.

In the instant case, Sgt. Santos fired twice at Mr. Lopez when Mr. Lopez, with a blade in his hand, ran toward Officer Van der Hoek after Mr. Lopez had ignored Sgt. Santos's commands to remain on the ground, to show his hands, and to drop the blade, and after Officer Van der Hoek had attempted to subdue Mr. Lopez with a Taser. These facts are analogous to the facts in *Sheehan*, where the officers fired multiple shots at the plaintiff when the plaintiff approached the officers with a blade after the officers attempted to subdue the plaintiff with pepper spray. 135 S. Ct. at 1775. Thus, under the U.S. Supreme Court's holding in *Sheehan*, it was not a Fourth Amendment violation for Officer Van der Hoek to shout for Sgt. Santos to shoot Mr. Lopez and for Sgt. Santos to fire at Mr. Lopez in order to protect Officer Van der Hoek. *See id.* ("Nothing in the Fourth Amendment barred [the defendant officers] from protecting themselves, even though it meant firing multiple rounds."). Likewise, as in *Sheehan*, this conclusion is unaltered by Plaintiff's allegations that Mr. Lopez may have suffered from a mental illness.

Because, under *Sheehan*, Defendants' actions were not a Fourth Amendment violation, Defendants are entitled to qualified immunity on Plaintiff's § 1983 claim for Defendant's use of deadly force against Mr. Lopez. The Court therefore GRANTS Defendants' motion for summary judgment as to Plaintiff's § 1983 claim that Defendants' use of deadly force against Mr. Lopez violated Mr. Lopez's Fourth Amendment rights. *Pearson*, 555 U.S. at 232.

### 3. Whether Plaintiff Has Shown a Fourteenth Amendment Violation

In Plaintiff's first cause of action, Plaintiff additionally alleges that Defendants violated Mr. Lopez's Fourth Amendment rights by handcuffing Mr. Lopez on the ground after Mr. Lopez was shot.

Defendants argue that they are entitled to qualified immunity on Plaintiff's claim that handcuffing Mr. Lopez violated Mr. Lopez's Fourth Amendment rights because the use of handcuffs did not constitute a Fourth Amendment violation. Plaintiff's opposition does not respond to Defendants' arguments about Defendants' use of handcuffs.

The Ninth Circuit has held that the use of handcuffs is not a constitutional violation in situations including: "(1) 'where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight;' (2) 'where the police have information that the suspect is currently armed;' (3) 'where the stop closely follows a violent crime;' and (4) 'where the police have information that a crime of violence is about to occur.'" *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1176 (9th Cir. 2013) (quoting *Washington v. Lambert*, 98 F.3d 1181, 1189 (9th Cir. 1996)). By running toward Officer Van der Hoek with a blade in hand, Mr. Lopez took an action "at the scene that raises a reasonable possibility of danger or flight" by threatening Officer Van der Hoek. *Id.* Therefore, under Ninth Circuit law, Defendants did not violate Mr. Lopez's Fourth Amendment rights by handcuffing Mr. Lopez. *Id.*

Because, under Ninth Circuit law, the use of handcuffs was not a Fourth Amendment violation, Defendants are entitled to qualified immunity on Plaintiff's § 1983 claim for Defendant's use of handcuffs. Therefore, the Court GRANTS Defendants' motion for summary judgment as to Plaintiff's § 1983 claim that Defendants' use of handcuffs violated Mr. Lopez's Fourth Amendment rights. *Pearson*, 555 U.S. at 232.

**4. Whether Plaintiff Has Shown a Fourteenth Amendment Violation**

Plaintiff's second cause of action alleges that Defendants violated Mr. Lopez's Fourteenth Amendment rights by using excessive force against Mr. Lopez and by denying Mr. Lopez medical care.

Plaintiff states in Plaintiff's opposition that "Plaintiff withdraws his claim for denial of

medical care and therefore does not oppose Defendant's Motion as to that allegation." *Id.* at 3. Accordingly, the Court GRANTS Defendants' motion for summary judgment as to Plaintiff's claim for denial of medical care.

As to Plaintiff's claim that Defendants violated Mr. Lopez's Fourteenth Amendment rights by using excessive force against Mr. Lopez, Plaintiff specifically alleges that Defendants used excessive force against Mr. Lopez by using deadly force against Mr. Lopez and by handcuffing Mr. Lopez after Mr. Lopez was shot. The U.S. Supreme Court has held that claims "that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [a free citizen's] person . . . are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). Thus, Plaintiff's claim for excessive force must be analyzed as a Fourth Amendment violation, not a Fourteenth Amendment violation. *Id.* As explained above, Plaintiff has not shown that Defendants violated Mr. Lopez's Fourth Amendment rights. Therefore, Defendants are entitled to qualified immunity on Plaintiff's § 1983 claim for violation of Mr. Lopez's Fourteenth Amendment rights, and the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's second cause of action.

### B. State Law Claims for Wrongful Death and Negligence

In addition to Plaintiff's two § 1983 claims, Plaintiff brings two state law claims: one for wrongful death and one for negligence.

#### 1. Wrongful Death

In the context of claims for wrongful death, "[t]here can be no civil liability under California law as the result of a justifiable homicide." *Martinez v. Cty. of L.A.*, 47 Cal. App. 4th 334, 349 (1996) (quoting Cal. Penal Code § 196). In California, "a police officer who kills someone has committed a justifiable homicide if the homicide was 'necessarily committed in overcoming actual resistance to the execution of some legal process, or in the discharge of any other legal duty.'" *Id.* The test for whether homicide was justifiable is "whether the circumstances 'reasonably create[d] a fear of death or serious bodily harm to the officer or to

another.'" *Id.* (quoting *Kortum v. Alkire*, 69 Cal. App. 3d 325, 333 (1977)). California courts have held that when the officers' conduct is reasonable for purposes of the Fourth Amendment, the officers' conduct is also reasonable for purposes of determining whether a homicide was justifiable under California law. *Id.*

In the instant case, the Court has already found that Defendants acted reasonably for purposes of the Fourth Amendment. Thus, Defendants may not be held liable for wrongful death under California law. *See id.* ("There can be no civil liability under California law as the result of a justifiable homicide."). Therefore, the Court GRANTS Defendants' motion for summary judgment as to Plaintiff's wrongful death claim.

### 2. Negligence

Under California negligence law, courts are to consider "the totality of the circumstances surrounding any use of deadly force." *Hayes v. Cty. of San Diego*, 57 Cal.4th 622, 639 (2013) (citations omitted). Thus, the California Supreme Court in *Hayes* held that negligence claims regarding the use of deadly force are analyzed under the Fourth Amendment reasonableness framework, but that a plaintiff may nevertheless maintain a claim that the officers' conduct prior to the use of deadly force was negligent even when the use of deadly force was reasonable. *Id.*

In the instant case, the Court has found that Defendants' use of force was reasonable under the Fourth Amendment. *See supra.* Thus, Plaintiff's negligence claim is limited to Defendants' conduct prior to Defendants' use of deadly force. *Id.*

Plaintiff argues that Defendants were negligent in their conduct prior to the use of deadly force because Defendants knew that Mr. Lopez was mentally ill and "ignored all of their training and policies concerning police interaction with mentally ill persons" in such a way that Defendants unreasonably provoked Mr. Lopez. ECF No. 40 at 21. However, Plaintiff has not identified any evidence in the record that Mr. Lopez in fact suffered from a mental illness, nor has the Court found any such evidence in its exhaustive review of the exhibits filed by both parties in connection with the instant motion. Because there is no evidence in the record that Mr. Lopez suffered from a mental illness, let alone that Defendants knew Mr. Lopez suffered from a mental illness,

Defendants were not liable for negligence for allegedly failing to follow their training for how to interact with mentally ill persons.

Moreover, Plaintiff's allegation that Defendants were negligent because they aggravated the encounter with Mr. Lopez is contradicted by the Court's review of the video from Officer Van der Hoek's body camera, and the Court at summary judgment must view "the facts in the light depicted by the videotape." *Harris*, 550 U.S. at 381. At the time of the encounter, Defendants were responding to an alert sent out by the SJSUPD regarding an individual matching Mr. Lopez's description who had a weapon and who posed a potential threat. Hamoy-Perera Decl., Exh. A at 41:8-21, 43:18-24. The video shows Defendants standing at a distance from Mr. Lopez while Sgt. Santos issued verbal commands to Mr. Lopez. When Mr. Lopez began walking toward Officer Van der Hoek, the video shows Officer Van der Hoek backing up to keep his distance from Mr. Lopez. Officer Van der Hoek deployed his Taser at Mr. Lopez only after Mr. Lopez refused to comply with Sgt. Santos's verbal commands to remain on the ground and to show his hands, took out a blade over 12 inches from his sweatshirt pocket, ignored Sgt. Santos's command to drop the blade, and began to walk toward Officer Van der Hoek. The video then shows that Officer Van der Hoek did not close in on Mr. Lopez but in fact backed away from Mr. Lopez as Mr. Lopez then ran toward Officer Van der Hoek. Viewing the facts "in the light depicted by the videotape," *Harris*, 550 U.S. at 381, the Court concludes that Defendants' conduct prior to the use of deadly force was reasonable.

Therefore, the Court GRANTS Defendants' motion for summary judgment as to Plaintiff's negligence claim.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment as to all four of Plaintiff's claims.

**IT IS SO ORDERED.**

Dated: March 10, 2016

_____
LUCY H. KOH
United States District Judge

13
Case No. 15-CV-00355-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT